## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ARNOLD EDMONDS,

     Plaintiff,

v.                           Case No: 8:22-cv-825-CEH-SPF

AIR & LIQUID SYSTEMS
CORPORATION, et al.,

     Defendants.

_____

## <u>ORDER</u>

This asbestos products liability suit comes before the Court on Defendant Valves and Controls US, Inc.'s [1] *Daubert* Motion to Exclude or Limit the Expert Testimony and Opinions of Candace Su-Jung Tsai (Doc. 298) and Defendant Warren Pumps, LLC's *Daubert* Motion to Exclude or Limit Certain Testimony of Candace Tsai (Doc. 300). Plaintiff filed a combined response in opposition (Doc. 313) and Defendants replied (Docs. 330, 333). Upon due consideration, the Court will deny both motions.

---

[1] This Defendant was formerly known as Atwood & Morrill Co., Inc., and is referred to in the briefing, expert report, and this Order as "Atwood."

## BACKGROUND[2]

Plaintiff Arnold Edmonds served aboard the *USS Saratoga* (an aircraft "supercarrier") from 1962–1964. Doc. 1-1 ¶ 8; Doc. 296 at 4. While on the ship, Plaintiff alleges he was exposed to asbestos, as a result of which he contracted non-small cell lung carcinoma. Doc. 1-1 ¶¶ 12–29. He filed suit against more than twenty companies and manufacturers[3] of parts and machinery on the *USS Saratoga* under theories of negligence and strict liability. *Id.*

Defendants seek to exclude or limit the testimony of Plaintiff's expert industrial hygienist Dr. Candace Su-Jung Tsai, Ms, ScD, CIH.[4] Docs. 298, 300. Dr. Tsai authored a 25-page expert report related to Plaintiff's case (Doc. 211-6), based on her expertise as a researcher, Certified Industrial Hygienist, and Professor of Occupational Health and Industrial Hygiene. Doc. 211-6 at 3.

Plaintiff asserts that Dr. Tsai properly opined on several relevant issues, including asbestos threshold limit, asbestos insulation materials, asbestos-containing gaskets and packing, and asbestos-containing friction materials. Doc. 313 at 4–5. Dr. Tsai reviewed Plaintiff's deposition transcript, Complaint, discovery materials,

---

[2] The Court limits its recitation of the background facts to those necessary for consideration of the instant Motions.

[3] All defendants besides Atwood and Warren have been dismissed.

[4] Because Defendants do not challenge Dr. Tsai's qualifications as an expert, the Court largely omits facts regarding her background and extensive qualifications, which are detailed in the expert report and Plaintiff's response. *See* Doc. 211-6 at 3, Doc. 313 at 6.

medical reports, exposure and deposition summaries, and many peer-reviewed scientific articles listed in the references of her report. Doc. 211-6 at 4.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 is a codification of the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  In *Daubert*, the Supreme Court described the gatekeeping function of the district court to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Id.* at 589; *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*). The Court extended its reasoning in *Daubert* to non-scientist experts in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

In performing its gatekeeping function, the Eleventh Circuit has stated that district courts should consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address, (2) the methodology by which the expert reaches his

> conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*, and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Thus, the three discrete inquiries to determine the admissibility of expert testimony are qualifications, reliability, and relevance. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1341 (11th Cir. 2003). Although there is some overlap among these inquiries, they are distinct concepts that the Court and litigants must not conflate. *Id.*

"The admission of expert testimony is a matter within the discretion of the district court, which is afforded considerable leeway in making its determination." *Frazier*, 387 F.3d at 1258. The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury: instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311–1312 (11th Cir. 1999).

## DISCUSSION

Atwood and Warren make nearly identical arguments, including that Dr. Tsai's testimony: (1) is not relevant because it does not mention the products of these particular defendants; (2) is not reliable because it does not opine on exposure from the respective defendants; (3) is unhelpful and/or confusing to the jury; and (4) is unduly prejudicial. Having reviewed the arguments and caselaw of both Parties, many of Defendants' arguments are conclusory, and none are persuasive under Rule 702 and *Daubert*, which the Court must apply here.

### A. Atwood's Motion (Doc. 298)

Atwood challenges the relevance, reliability, and "fit" of Dr. Tsai's proposed testimony. Doc. 298 at 2. It argues that her "total exposure" opinions will not help the jury decide whether exposure to Atwood valves in particular was substantial. *Id.* at 2–3. Atwood further contends that her "total" or "cumulative" exposure opinions do not fit the case based on a lack of evidence that Atwood valves contained asbestos, or as to the frequency, regularity, proximity, and duration of Plaintiff's work with Atwood valves. *Id.* at 3. Atwood also argues that Dr. Tsai did not employ or reliably apply valid industrial hygiene methodology to the facts. *Id.* Finally, Atwood argues that any probative value of her testimony would be outweighed by the likelihood of undue prejudice. *Id.* at 16–17.

Plaintiff responds that Dr. Tsai is unquestionably qualified, that her testimony fits within the confines of this case and would help a jury understand complicated

topics, and that she used reliable principles to come to her conclusions and reliably applied them to the facts presented. *See* Doc. 313 at 6–17.

*Relevance, Fit, and Foundation*

Each of Atwood's arguments based on insufficient relevance, fit, and foundation is conclusory, based on distinguishable authority, or more appropriate for determination at summary judgment. Doc. 298 at 13–16.

First, rather than challenging any of the opinions in Dr. Tsai's report, Atwood argues that she failed to provide a few "Atwood-specific" opinions she should have. *Id.* at 13. Asserting that Dr. Tsai's role is to educate the jury as to the significance of Plaintiff's alleged asbestos exposure to Atwood valves, Atwood contends that her opinions and exposure assessment "do not do that." *Id.* Plaintiff responds that Dr. Tsai opined generally on Plaintiff's exposure to asbestos while working on the *Saratoga* and in other workplaces, "not on whether a specific Defendant caused his asbestos-related cancer." Doc. 313 at 7. The Court agrees that Atwood's assertion—that Dr. Tsai must opine on whether its products caused Plaintiff's cancer in order to be *admissible* under *Daubert*—is unsupported by authority and will be rejected.

Similarly unconvincing is Atwood's argument that Dr. Tsai's opinions and data should be excluded because they will not assist the jury in determining Plaintiff's exposure from Atwood valves. Doc. 298 at 13. Without explanation, Atwood jumps to the conclusion that Dr. Tsai's opinions are therefore "irrelevant." *Id.* It fails to cite any support for its narrow view of relevance in this context, so this argument fails too.

6

Next, Atwood argues that maritime law "requires the application of general exposure information to specific Atwood exposure." *Id.* at 14. As Defendants did in their *Daubert* motions relating to Plaintiff's other experts, they cite *Carpenter v. 3M Company,* No. CV 20-11-797-MWF, 2022 WL 17885688, at *15 (C.D. Cal. Dec. 13, 2022), for this proposition. As Plaintiff points out, however, *Carpenter* is not binding, and moreover not relevant because it held that an expert's testimony was insufficient to show a genuine issue of fact as to causation—not that the expert's testimony should be excluded under *Daubert*.  2022 WL 17885688 at *15–18.[5] Atwood fails to explain how *Carpenter* supports exclusion of Dr. Tsai's testimony.

Next, Atwood's argument that Dr. Tsai's opinions do not "fit" Atwood valves appears to be a simple rewording of its argument that she failed to opine on whether Atwood valves caused Plaintiff's illness. Doc. 298 at 14–15. And the citation to *McIndoe v Huntington Ingalls, Inc.*, 817 F. 3d 1170, 1177 (9th Cir. 2016) is unconvincing. *McIndoe*, like *Carpenter*, rejected the "each and every exposure" theory of causation and granted summary judgment based on the issue of specific causation. Dr. Tsai does not use this improper theory or opine on specific causation, however, and the Court must decide this motion based on *Daubert*, not on whether a genuine issue of material fact exists.

---

[5] Additionally, as Plaintiff points out, *Carpenter* is different because the expert there relied on an improper "every exposure" theory to reach his causation opinions. *Carpenter*, 2022 WL 17885688, at *44. Dr. Tsai's report contains no such opinions.

Atwood also argues that Dr. Tsai's opinions as to total exposure "do not fit the facts of the case" because there is no evidence Atwood valves contained asbestos. *Id.* Without citing to a particular opinion or page in Dr. Tsai's 25-page report, Atwood contends that "[t]here is no connection here between Dr. Tsai's opinions and the evidence." *Id.* Further, Atwood argues there is an "insurmountable analytical gap" between the gasket studies, Dr. Tsai's generic "one size fits all" gasket-work exposure opinions, and the evidence in this case with respect to Atwood. *Id.* at 15.

It is challenging to evaluate, much less exclude, an expert's opinions when a movant fails to cite to specific parts of the report or explain how its authority applies to the facts. On this issue, the Court agrees with Plaintiff that the concept of "fit" generally concerns whether expert testimony is sufficiently tied to the facts of the case such that it will aid the jury is resolving a factual dispute. Doc. 313 at 6 (citing *Daubert* 509 U.S. at 591). Although the Court will address whether Dr. Tsai's testimony more likely than not satisfies the requirements of Rule 702 separately below, Atwood's repeated argument for exclusion because Dr. Tsai did not opine on specific causation as to Atwood products is not supported by any authority and must be rejected.

Atwood next argues Dr. Tsai did not base her opinions on any articulated methodology. Doc. 298 at 16. It argues she did not use a "recognized dose reconstruction methodology or otherwise compare alleged exposure to Atwood valves to exposure to all asbestos-containing products on the ship." *Id.* Finally, Atwood argues that Dr. Tsai has no way to even apply the "necessary defendant-specific industrial hygiene analysis" because there is no record evidence regarding the

frequency, regularity, proximity, and duration of Plaintiff's exposure to asbestos from Atwood valves. *Id.*

The latter arguments regarding evidence of exposure to Atwood valves resemble those already rejected as issues for a summary judgment motion. To the extent Atwood argues that Dr. Tsai's opinions are inadmissible because she did not opine on specific causation or because there is insufficient evidence to establish specific causation in the record, these arguments again fail as they are not based on the *Daubert* standard.

Next, Plaintiff disagrees that Dr. Tsai "did not use any articulated methodology." Doc. 313 at 16–17. Instead, he argues that she

> reviewed a plethora of Mr. Edmonds' case documents, including three-days of Mr. Edmonds' deposition testimony, his verified interrogatory answers, his pathology report, his CT report, his social security records, Dr. Zhang's expert report, and the complaints. In conjunction with the facts gleaned from this material, Dr. Tsai

> then drew upon her expertise in the field and her opinion on tested, peer-reviewed, and published articles and research studies relating to asbestos exposure. Dr. Tsai walked through the multitude of articles she reviewed, analyzed, and incorporated within her opinion. This methodology is generally accepted in the field of industrial hygiene as it has been developed since the early 1900s with many publications and standards the Occupational Safety and Health Administration (OSHA) adopted. The methodology is not only accepted within the field, but taught through textbooks and standards, and stems from OSHA itself.

Atwood replies that Dr. Tsai's methodology "ignores basic toxicology" and does not estimate Plaintiff's alleged exposure to asbestos from Atwood valves. Doc. 330 at 8. It also argues that she applied no principles, science, or methodology with respect to what it calls "Atwood facts." *Id.* Here again, having reviewed Dr. Tsai's

report and the Parties' briefing, the Court finds no basis to conclude that Dr. Tsai's testimony should be excluded from the jury. As Plaintiff sets out in his response, Dr. Tsai more likely than not used a reliable methodology from the field of industrial hygiene, and the Court has no basis to find otherwise. Lastly, to the extent Defendant argues that Plaintiff fails to establish a genuine issue of fact as to causation, this will be addressed at summary judgment.

*Rule 403*

Atwood's conclusory argument under Federal Rule of Evidence 403 fails too. Pursuant to Rule 403, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Importantly, "Rule 403 'is an extraordinary remedy which should be used sparingly, and, indeed, the trial court's discretion to exclude evidence as unduly prejudicial is narrowly circumscribed.'" *United States v. Cross,* 928 F.2d 1030, 1051 (11th Cir. 1991). Atwood argues that Dr. Tsai's testimony should be excluded based on the "likelihood that it will confuse and mislead the jury into assuming erroneously that Plaintiff worked with Atwood valves that contained asbestos and/or was exposed to excessive levels of asbestos from Defendant's products." Doc. 298 at 17. This argument conflicts with Atwood's previous arguments that Dr. Tsai failed to opine on specific causation (or otherwise provide testimony as to Atwood in particular). Moreover, the Court agrees with Plaintiff that Atwood has

not shown that any Rule 403 risk substantially outweighs the probative value of Dr. Tsai's testimony. Therefore, the Court will deny Atwood's motion.

### B. Warren's Motion (Doc. 301)

Warren's motion is nearly identical to Atwood's. The Court will similarly reject its arguments for exclusion: (1) because Dr. Tsai does not opine on specific causation as to Warren; (2) based on *Carpenter*, *McIndoe*, and similarly distinguishable cases that dealt with motions for summary judgment[6]; (3) based on a conclusory argument that Dr. Tsai's opinions do not "fit" the case because she does not proffer a specific causation opinion; and (4) based on Rule 403. *See* Doc. 301.

However, the Court considers separately Warren's argument that Dr. Tsai's opinions are not "based on a valid industrial hygiene exposure methodology." Doc. 300 at 19. It argues that Dr. Tsai did not consider "dose-response – the fundamental tenet of toxicology" with respect to Warren, and that she "cherry-picked airborne asbestos exposure studies," neglecting to consider certain other studies that contained data showing that gasket and packing activities lead to negligible airborne asbestos levels. *Id.*

Neither argument is persuasive. As to the argument regarding the necessity of using dose-response theory, the case Warren relies on, *McClain v. Metabolife Int'l, Inc.,*

---

[6] Warren also cites *Thurmon v. Georgia Pacific, LLC,* 650 Fed. Appx., 752, 757 (11th Cir. 2016), an unpublished Eleventh Circuit opinion, for the proposition that a plaintiff must prove exposure to a particular defendant's product. Doc. 300 at 17. That non-binding opinion dealt with Georgia law and an appeal of a district court's grant of summary judgment in favor of a defendant. It has no clear relevance to this Daubert challenge. It also cites Sixth Circuit and Texas state-court decisions that are distinguishable for the same reasons. *Id.*

401 F.3d 1233, 1236 (11th Cir. 2005), excluded testimony of a causation expert, which Dr. Tsai is not. As to the "cherry-picking" argument, Plaintiff correctly notes that experts may rely on the research, studies, reports, and expertise of others, and that "deference ought to be accorded to the expert's view that experts in his field reasonably rely on such sources of information." Doc. 313 at 15 (citing *Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, No. 5:05-cv-260-GRJ, 2008 U.S. Dist. LEXIS 125076, *7-8 (M.D. Fla. Aug. 12, 2008)).

Additionally, the caselaw Warren cites involving experts improperly cherry-picking data are distinguishable. First, in *Vandestreek v. Lockheed Martin Corporation*, the expert in question cited "one updated study that supported his conclusion followed by the omission of two updates studies (on the very same cohort) that did not support his conclusion," and "cit[ed] public health regulators for some of their conclusions while ignoring others." No. 6:21-CV-1570-RBD-DCI, 2023 WL 6396087, at *7 (M.D. Fla. Sept. 27, 2023), *appeal dismissed,* No. 23-13560-AA, 2024 WL 1756018 (11th Cir. Feb. 7, 2024). The Court found that such "cherry-picking" or selective citation was improper and concluded that the literature as a whole did not support his opinions and suggested that his methodology was too unreliable to satisfy *Daubert*. *Id.* Here, Warren's conclusory argument that Dr. Tsai failed to mention (unnamed) studies that cut against her opinion does not rise to nearly the same level of cherry-picking or show that her methodology is unreliable. Therefore, Warren fails to provide a sufficient basis for excluding Dr. Tsai's testimony.

*In re Zantac (Ranitidine) Prod. Liab. Litig.*, 644 F. Supp. 3d 1075, 1158 (S.D. Fla. 2022) is likewise distinguishable, as the expert in that case cherry-picked data to intentionally leave out testing results that "did not produce the outcomes . . . that he was seeking to include in his report." This conclusion was based on the expert's deposition testimony and his report. *Id.* at 1158–59. Here, again, Warren fails to cite any specific examples of Dr. Tsai cherry-picking data in deposition testimony that would call into question her methodology and its reliability.

Nor are the facts here like *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II)* MDL 2502, 892 F.3d 624, 634 (4th Cir. 2018). There, the Fourth Circuit upheld a trial court's decision to exclude an expert due to data manipulation which has not been alleged or established here. Specifically, the expert there performed a statistical analysis, which showed a statistically insignificant association between a drug and the onset of disease. *Id.* at 634. Rather than reporting that value, however, he omitted it from his initial expert report and reported a different statistical metric that showed a statistically significant result. *Id.* Again, nothing in Warren's motion suggests similar conduct by Dr. Tsai. Therefore, Warren's arguments based on Dr. Tsai's methodology are unavailing.

## C. *Daubert* Factors

Finally, the Court will return to the factors that the Eleventh Circuit has stated proponents of expert testimony must establish. These are whether: (1) the expert is qualified to testify competently regarding the matters she intends to address, (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as

determined by the sort of inquiry mandated in *Daubert*, and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Frazier,* 387 F.3d at 1260.

Dr. Tsai's qualifications are unchallenged, and the Court sees no reason to doubt that she is qualified to testify competently regarding the matters she intends to address based on her extensive education, experience, and training. *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 563 (11th Cir. 1998).

As to reliability, the majority of Defendants' arguments take issue with the fact that Dr. Tsai did not opine on specific causation, and that evidence of specific causation is lacking in the record. These arguments are unavailing. Dr. Tsai's methodology is sufficiently reliable.

As previously discussed, Defendants' arguments are not proper grounds for exclusion under *Daubert*. In applying the gatekeeping function, courts must ensure that speculative, unreliable expert testimony does not reach the jury. *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002). "Experts, however, are entitled to state reasonable assumptions." *Se. Metals Mfg. Co. v. Fla. Metal Prod., Inc.,* 778 F. Supp. 2d 1341, 1344 (M.D. Fla. 2011) (citing *Maiz v. Virani,* 253 F.3d 641, 667 (11th Cir. 2001)). Defendants' arguments that certain evidence is lacking as to Warren or Atwood products will be more appropriate for consideration on a summary judgment order, or as to the weight of the expert testimony, not its admissibility. *See, e.g., S. Gardens Citrus Processing Corp. v. Barnes Richardson & Colburn,* No. 2:11-cv-JES-UAM,

2013 WL 5928676, at *3 (M.D. Fla. Nov. 1, 2013) ("Defendants' challenge to the experts' unfamiliarity with the work of attorneys in the area of international trade law would be properly made through vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof, but not wholesale exclusion of their testimony.").

Finally, Defendants fail to explain why Dr. Tsai's opinions would not be helpful to the trier of fact. As the Eleventh Circuit recently explained, expert testimony is unhelpful when, for example, "it offers nothing more than what lawyers for the parties can argue in closing arguments." *Harris v. Hixon,* 102 F.4th 1120, 1132 (11th Cir. 2024) (citing *Frazier*, 387 F.3d at 1262–63). Here, to the contrary, Dr. Tsai's opinions and testimony would likely be helpful to a jury based on her qualifications, experience, and analysis of the records and evidence based on her industrial hygiene expertise.

In sum, the arguments Defendants make for exclusion of Dr. Tsai's testimony are either more appropriate for summary judgment or unsupported by authority and the record. Based on the Court's consideration of the pleadings and the applicable standards for exclusion of expert testimony, Plaintiff has successfully established that her testimony should not be excluded under *Daubert* and Federal Rule of Evidence 702. To the extent Defendants assert objections to Dr. Tsai's opinions based on Rules 402 and/or 403, Federal Rules of Evidence, they may be raised at trial.

Accordingly, it is **ORDERED**:

1. Defendant Valves and Controls US, Inc.'s  Daubert Motion to Exclude or Limit the Expert Testimony and Opinions of Candace Su-Jung Tsai (Doc. 298) is **DENIED**.

2. Defendant Warren Pumps, LLC's Daubert Motion to Exclude or Limit Certain Testimony of Candace Tsai (Doc. 300) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on July 1, 2024.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record