## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ARNOLD EDMONDS,

     Plaintiff,

v.                                                    Case No: 8:22-cv-825-CEH-SPF

AIR & LIQUID SYSTEMS
CORPORATION, et al.,

     Defendants.

_____

## <u>ORDER</u>

     This single-plaintiff asbestos products liability suit comes before the Court on motions for summary judgment filed by Defendant Valves and Controls US, Inc.[1] (Doc. 192) and Defendant Warren Pumps, LLC (Doc. 225). Plaintiff responds in opposition (Docs. 211, 257), and Defendants reply (Docs. 213, 264). Upon due consideration, the Court will grant summary judgment to both Defendants based on Plaintiff's failure to meet his burden as to causation.

---

[1] This Defendant was formerly known as Atwood & Morrill Co., Inc., and is referred to in the briefing, expert report, and this Order as "Atwood."

## FACTS AND PROCEDURAL BACKGROUND[2]

Plaintiff Arnold Edmonds is a United States Navy veteran who—as relevant to the claims here—served as a machinist mate aboard the *USS Saratoga* (an aircraft "supercarrier") from 1962–1964. Doc. 1-1 ¶ 8; Doc. 297 at 4; Doc. 256 at 1 ¶ 1. While aboard the ship, he was exposed to asbestos, as a result of which he contracted non-small cell lung carcinoma. Doc. 1-1 ¶¶ 12–29. He filed suit against more than twenty companies and manufacturers of parts and machinery on the *USS Saratoga* under theories of negligence and strict liability. *Id.* The two remaining defendants, Atwood and Warren Pumps ("Warren") both move for summary judgment.

*Plaintiff's Testimony as to Defendant Atwood's Products*

Plaintiff served as a Machinist Mate aboard the *Saratoga* from 1962 to 1964, where he worked primarily in the No. 4 auxiliary engine room, and occasionally in the No. 4 main engine room. Doc. 211-1 at 1. His work in this role included, among other things, replacing gaskets and replacing packing on valves. *Id.*

Plaintiff was the only fact witness deposed in this case. He testified extensively regarding his service on the *Saratoga*, the work that he performed, and the extent to which he remembered the various products he worked on and their brand names. *See* Doc. 211-2. Plaintiff recalled Atwood as a brand of valve on which he replaced gaskets and packing, in addition to at least seven other brands of valves. *Id.* at 18;

---

[2] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, and the Joint Stipulation of Agreed Material Facts (Doc. 256). For purposes of summary judgment, the Court considers the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

Doc. 211-1 at 2. He stated that he worked on Atwood valves and the various other brands "about equally." Doc. 211-2 at 18. Plaintiff could not recall seeing any Atwood specifications calling for the use of asbestos or seeing anyone work on Atwood valves specifically. *Id.* at 119–120.

The brunt of Plaintiff's testimony regarding his work on the ship focused on the process by which he maintained all valves generally and did not discuss Atwood (or Warren) products in particular. Plaintiff knew gaskets on the ship contained asbestos because the box from which he obtained the gasket material was marked with the word "asbestos." *Id.* at 19. He changed gaskets on valves every four to six weeks, and it took 30 minutes on each side to change out a gasket. Plaintiff believes that he breathed in asbestos-containing dust in the process that he could see blowing around in the air. *Id.*

Plaintiff also discussed the regular packing changes that he performed on valves. *Id.* at 20. He described digging the old packing out of the gland, blowing out excess dust with compressed air, cutting new rope packing, and re-installing the new cut packing. *Id.* Finally, Plaintiff testified that removing the insulation covering the valves would again cause dust to enter the air surrounding him. *Id.* at 21.

*Plaintiff's Testimony as to Defendant Warren's Products*

Plaintiff identified Warren as one of the eight manufacturers of pumps aboard the *Saratoga*. Doc. 256 at 2 ¶ 5. Plaintiff was not positive, however, as to whether any were located in the ship's auxiliary room. Doc. 211-2 at 126. Plaintiff supervised the work of the twenty-six machinist's mates under him, in addition to performing

3

hands-on work on pumps, including gasket and packing work. Doc. 256 ¶ 6. He did not work on any brand of pump more frequently than another. *Id.* He also conceded that the Warren name might have been on the list of brands he later created because he knew it from somewhere else. *Id.* When asked if he "recall[ed] any information at all about a Warren pump on board the *Saratoga*," he answered: "Yeah. I don't recall." *Id.* Furthermore, Plaintiff was not sure as to whether he changed any packing or gaskets on a Warren pump. *Id.*

*Expert Testimony and the Court's Daubert Order*s

Atwood and Warren each previously moved to exclude the testimony of Plaintiff's expert witnesses. The Court denied the motions as to Captain Bruce Woodruff, whose 46-page expert report was based on his analysis of evidence in the case as an expert in naval design, construction, operation, inspection, repair, and maintenance. *See* Doc. 359. Similarly, Defendants' motions were denied as to Dr. Candace Su-Jung Tsai, Plaintiff's expert industrial hygienist who opined on issues including asbestos threshold limits, asbestos insulation materials, asbestos-containing gaskets and packing, and asbestos-containing friction materials. *See* Doc. 360.

As to Dr. David Zhang, Plaintiff's medical causation expert, the Court granted Defendants' motions to exclude in part. Doc. 361. Causation is at the center of the two motions for summary judgment here, so Dr. Zhang's report and the Court's *Daubert* order are especially pertinent.

Dr. Zhang used his experience as an occupational physician and researcher to opine on the cause of Plaintiff's illness, considering his asbestos exposure history,

pathological analyses, medical records, and relevant scientific literature. Doc. 202-5 at 7. In addition, he reviewed Plaintiff's pathological studies and reports, other medical records, complaints, discovery responses, and deposition transcripts. *Id.* The report detailed Plaintiff's occupational history and asbestos exposure while in the Navy, subsequent work environments, and at home. *Id.* at 3–4. It noted Plaintiff's history of smoking and family history of cancer. *Id.* at 4. Dr. Zhang then summarized Plaintiff's prior relevant medical imaging and pathology reports from numerous facilities, as well as his own pathology findings based on samples from Plaintiff. *Id.* at 5–6.

Defendants objected to two causation-related opinions in Dr. Zhang's report. Specifically, his opinions that:

> 1. "the cumulative exposure of each asbestos-containing product significantly contributed to the development of [Plaintiff's] lung cancer" (Doc. 202-5 at 7)

> 2. "It is my further opinion . . . that all of [Plaintiff's] asbestos exposures increased his risk of asbestos-related lung cancer in a cumulative, dose related manner and that all of [Plaintiff's] exposures that are found to be regular, frequent and proximate were substantial contributing factors to the development of his asbestos-related lung cancer, asbestosis and pleural plaque." (Doc. 202-5 at 6).

The Court excluded Dr. Zhang's first opinion under *Daubert*, finding that Plaintiff had not established that it was the product of reliable principles and methods reliably applied to the facts of this case. Doc. 361 at 22. This opinion was unreliable for the reasons courts widely reject the "each and every exposure theory" and similar overly broad causation theories. *Id.* at 19. That is because under such a

5

theory, "each exposure, no matter how small" adds to the cumulative exposure that caused a plaintiff's illness, and each exposure thereby becomes a substantial contributing factor. *Id.* The Court concluded that Dr. Zhang's first opinion was unreliable because it failed to attempt to analyze Plaintiff's particular exposure or the degree to which it increased his risk of illness and ignored the dose-response relationship. *Id.* at 19–20. Dr. Zhang's second causation opinion, on the other hand, was sufficiently reliable because it acknowledged that the substantial factor causation analysis is dose-related and that such a finding hinges on evidence that a plaintiff's exposure was sufficiently regular, frequent, and proximate. *Id.* at 22–23.

## LEGAL STANDARD

Summary judgment is appropriate only when the court is satisfied that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law" after reviewing the "pleadings, the discovery and disclosure materials on file, and any affidavits[.]" Fed. R. Civ. P. 56(c)(2). In determining whether a genuine issue of material fact exists, the Court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. *Id.*

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine

issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  "Only when that burden has been met does the burden shift to the non-moving party." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

"[I]n order to survive summary judgment, the nonmoving party must set forth specific facts showing there is a genuine issue for trial." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 826 F. App'x 766, 770 (11th Cir. 2020), citing *Anderson*, 477 U.S. at 249-50.  "[U]nsupported 'conclusory allegations' do not suffice." *Middlebrooks v. Sacor Fin., Inc.*, 775 F. App'x 594, 596 (11th Cir. 2019).  Likewise, "[a] 'mere existence of a scintilla of evidence' cannot suffice to create a genuine issue of material fact." *Johnson*, 826 F. App'x at 770, quoting *Anderson*, 477 U.S. at 252.

## DISCUSSION

### Atwood's Motion (Doc. 192)

Atwood argues that summary judgment should be granted in its favor because there is no genuine dispute of fact as to product identification—*i.e.,* whether Plaintiff was exposed to asbestos from an Atwood product at all. Doc. 192 at 3. Specifically, it argues that the undisputed record evidence shows that the Atwood valves on the *USS Saratoga* did not contain asbestos, and that Plaintiff consequently cannot meet

his burden. *Id.* As discussed *infra*, Atwood argues in its reply brief that Plaintiff fails to establish a genuine issue of fact as to substantial factor causation.

Plaintiff responds that he has established his exposure to Atwood products on the *Saratoga*. Doc. 211 at 5–6. Moreover, he argues that he has provided evidence sufficient to create a genuine issue of fact as to the other elements of causation as well—that Atwood products on the ship contained asbestos, and that Atwood products specifically were a substantial factor in his ultimate asbestos-related injury. *Id.* at 5–15.

On reply, Atwood again argues that Plaintiff has failed to meet his burden on product identification. Doc. 213 at 3. It argues that Plaintiff all the more clearly falls short of demonstrating a genuine issue of fact as to the second element of causation, whether he had "substantial exposure" to asbestos from Atwood products "for a substantial period of time." *Id.* at 4–10.

*Product Identification*

The Court begins with product identification, the only grounds for summary judgment discussed in Atwood's initial motion. *See* Doc. 192. The Parties agree that maritime law applies here and requires a plaintiff to demonstrate that he was exposed to a defendant's product, and that this exposure was a substantial factor in

causing his ultimate injury. *Id.* at 7 (citing *Lindstrom v. A-C Prod. Liab. Tr.,* 424 F.3d
488, 492 (6th Cir. 2005)).[3]

Atwood argues that Plaintiff provides no evidence that he was exposed to
asbestos from gaskets or packing from an Atwood valve. *Id.* at 8. It contends that
engineering drawings for the valves on board the *Saratoga* indicate that none
specified the use of asbestos-containing gaskets or packing materials, and that the
magazine sprinkler valves did not even contain any gaskets or packing materials, but
a synthetic rubber O-ring instead. *Id.* Thus, it argues that Plaintiff has no evidence
that gaskets or packing in any Atwood valves on the *Saratoga* contained asbestos. *Id.*
at 9. Moreover, Atwood points out that Plaintiff could not recall the location of any
of its valves on the ship, any type of system on which they may have been used, any
particular type of work he did on an Atwood valve, the maintenance history of any
Atwood valve, or seeing any Atwood specifications calling for the use of asbestos.
Thus, Atwood argues that Plaintiff has not established a genuine issue as to product
identification and that summary judgment in its favor is warranted. *Id.* at 9–10.

---

[3] The Complaint brings one count for negligence and one count for strict liability against all
defendants. *See* Doc. 1-1. In presenting their arguments on causation, the Parties do not
distinguish between the two counts.

The standard for strict liability under maritime asbestos law is "essentially the same as that
of negligence," and requires a finding that exposure to a defendant's product was a
substantial factor among the total amount of exposure. *Rockwell v. Air & Liquid Sys. Corp.,*
No. CV 21-3963-GW-PLAX, 2022 WL 18228256, at *8 (C.D. Cal. Sept. 1, 2022) (citing
*McIndoe,* 817 F.3d at 1176, also citing *Lindstrom,* 424 F.3d at 492). Therefore, the analysis
that follows applies to both claims.

Plaintiff responds that he has provided sufficient evidence from which a reasonable jury could find that: (1) Atwood valves were used on the *Saratoga*; and (2) they contained asbestos. Doc. 211 at 6–12.

As to the first point, Plaintiff cites deposition testimony in which he recalled Atwood as a brand of valve on the ship. *Id.* at 8. Moreover, he testified to performing gasket and packing changes on all the brands of valves he worked on and remembered the Atwood name stamped into the side of a valve. *Id.* Additionally, Plaintiff argues that Atwood admits its valves were on the ship, as confirmed by Plaintiff's naval expert Captain Bruce Woodruff. *Id.* at 8–9.

Plaintiff next argues he has provided evidence from which a jury could conclude that the valves he maintained contained asbestos. *Id.* at 9–12. First, he points to deposition testimony in which he stated (without specifying a brand name) that the packaging for the gaskets he worked with were labeled with the word "asbestos." *Id.* at 9. He recalled that the steam valves used a gasket containing asbestos, and that these valves were covered in asbestos-containing insulation he came into contact with every time he worked on a valve. *Id.*

Plaintiff continues by citing expert testimony from Captain Woodruff and Atwood documents to argue that the valves contained asbestos. *Id.* at 9–10. As relevant, Captain Woodruff opined that asbestos lagging, gaskets, and packing were standard for valves at the time, and that equipment vendors for Navy ships utilized asbestos in their designs and manufacturing. *Id.* at 10. Captain Woodruff also noted in his report that the U.S. Navy Bureau of Ships required steam systems to use

asbestos felt if the steam temperature was between 850- and 950-degrees Fahrenheit, which he states was the case for the relevant steam systems on the *Saratoga*. *Id.* Therefore, Plaintiff argues that the Atwood valves used for the main and auxiliary steam system needed asbestos-containing parts. *Id.*

He also highlights the fact that Atwood provided Navy-approved engineering drawings for other valves used on the ship, although not the main and auxiliary steam systems. *Id.* Although drawings were not provided for the steam systems in question, which Plaintiff worked near, Plaintiff argues that the other drawings show that Atwood followed Navy Bureau of Ships requirements, and that just because some drawings did not "explicitly state asbestos" does not mean that these materials did not contain asbestos as well. [4] *Id.* Thus, Plaintiff argues that he has established a genuine issue of material fact as to whether he was exposed to asbestos-containing Atwood products. *Id.* at 11.

In reply, Atwood argues that Plaintiff still fails on product identification because he cites no evidence showing that an Atwood valve contained asbestos, nor any evidence that he was exposed to asbestos from an Atwood valve, as opposed to valves on the ship generally. Doc. 213 at 3.

---

[4] Additionally, Plaintiff alludes to an Atwood office memo from 1985 discussing products containing asbestos from the company's inception and mentioning a number of asbestos-reinforced rubber gaskets and models of sheet gaskets utilizing both asbestos and rubber in the same design. Doc. 211 at 11. The Court agrees that, as Atwood argues in its reply, this memo is too attenuated from the facts and time-period in this matter to be of probative value.

Further, Atwood argues that Captain Woodruff does not sufficiently connect the dots to create a jury question as to whether any Atwood valves in the steam systems contained asbestos either. *Id.* at 4. First, Atwood asserts that Captain Woodruff did not state definitively that there were asbestos-containing Atwood valves in the *Saratoga*'s steam systems or in the machinery rooms. *Id.* And even if there were such valves in the steam system, Atwood argues it is undisputed that there were also non-asbestos Atwood gate valves, per engineering drawings. Therefore, Atwood argues that the jury would have to speculate that Plaintiff worked on or near Atwood steam valves as opposed to the gate valves, and that such speculation is insufficient to defeat summary judgment. *Id.*

As to Plaintiff's arguments regarding Navy requirements, Atwood argues that they too are meritless. *Id.* at 4–5. It argues that Plaintiff cites no evidence from which a jury could find that there were any Atwood valves in the machinery rooms, and if there were, that they were steam valves. *Id.* at 5. Instead, based on Atwood's own expert and the engineering drawings in the record, Atwood contends that the evidence shows there were Atwood valves on a magazine sprinkler valve and a gate valve, neither of which used or needed asbestos for a hot medium. *Id.* Atwood describes Plaintiff's argument that the sprinkler and gate valves could have contained asbestos even if not indicated on the drawings as improperly speculative. *Id.* at 5. Finally, Atwood argues that the 1985 memo stating that some sheet gaskets, insulating spacers, and valve disks were made of rubber and asbestos is a red herring that fails to save Plaintiff on this element. *Id.* Thus, Atwood argues that none of

Plaintiff's evidence demonstrates a genuine issue of material fact as to whether he was exposed to any asbestos-containing Atwood valves on the *Saratoga.*

To establish causation under federal maritime law, a plaintiff must demonstrate, "for each defendant, that (1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005), *abrogated on other grounds by Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986 (2019); *see also McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) (adopting the *Lindstrom* causation test for asbestos-based maritime claims)).[5]

---

[5] The Court relies on these out-of-circuit maritime law decisions because the Parties base their arguments off of them and the Eleventh Circuit does not appear to have spoken to the issue in the maritime law context. Plaintiff devotes a section of his response to arguing that maritime law applies (Doc. 211 at 3–5). Atwood "does not dispute the application of maritime law." (Doc. 213 at 3 n.1).

The Court agrees that maritime law governs this action. Maritime jurisdiction applies to personal injury claims if the alleged injury satisfies the "location" and "connection" tests. *Jerome B. Grubart, Inc.* v. *Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The "location" test asks whether the injury occurred in or was caused by a vessel on navigable waterways, and the "connection" test asks whether the type of incident has a "substantial relationship to traditional maritime activity" and "a potentially disruptive impact on maritime commerce." *Id.* (quotations omitted). The location test is satisfied if some of the alleged asbestos exposure occurred on navigable waters. *See Conner* v. *Alfa Laval, Inc.,* 799 F. Supp. 2d 455, 467 (E.D. Pa. 2011).

*Lindstrom v. A-C Product Liability Trust,* 424 F.3d 488 (6th Cir. 2005), which the Parties cite extensively (and the Court relies on in analyzing causation), was adopted by a recent MDL asbestos action as the standard in asbestos cases applying maritime law. *See, e.g., Hall v. A.W. Chesterton Co.,* 2013 WL 2477160 (E.D. Pa. May 7, 2013); *Bolton v. Air & Liquid Sys. Corp.,* 2013 WL 2477169 (E.D. Pa. Apr. 30, 2013); *Pace v. 3M Co.,* 2013 WL 1890341 (E.D. Pa. Apr. 22, 2013). And as described by one trial court examining the state of the law in a similar matter, *Lindstrom* "appears in line with many state court decisions, requiring that there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked (i.e., the

---

Plaintiff provides enough evidence to establish a genuine issue of fact as to product identification, but not by much. Defendant Atwood is correct that, according to the affidavit of its own expert, none of the engineering drawings for valves purchased for service on the *Saratoga* indicate the presence of asbestos. *See* Docs. 201, 201-1, and 201-2.[6] And according to Atwood's expert, the engineering drawings do not show that the magazine sprinkler valves contained any gaskets or packing materials, but instead that the valve contained a synthetic rubber O-ring. Doc. 201-1 at 2.

Atwood also presents an accurate description of Plaintiff's deposition testimony. Plaintiff had no specific memory of an Atwood valve on the *Saratoga*. Doc. 192-2 at 48. He could not recall the location of a single Atwood valve or the type of system Atwood valves were used with. *Id.* He could not recall the temperature or medium such a valve would have been pushing. *Id.* And Plaintiff had no memory of seeing someone else work on an Atwood valve, install a new valve, or any particular type of work on any particular Atwood valves. *Id.* at 49. Further, Plaintiff did not know the maintenance history of any Atwood valve or recall seeing Atwood specifications calling for the use of asbestos. *Id.* at 48.

---

'regularity, frequency, and proximity' test)." *Cabasug v. Crane Co.,* 989 F. Supp. 2d 1027, 1034 (D. Haw. 2013), *abrogated on other grounds by Air & Liquid Sys. Corp. v. DeVries,* 586 U.S. 446 (2019).

[6] Initially, the exhibit Atwood filed together with its Motion omitted the engineering drawings themselves, but it submitted an amended filing with the expert affidavit and drawings, which the Court has reviewed.

Although Plaintiff argues that Atwood misconstrues his testimony, he shows no true dispute as to Atwood's description of the deposition testimony. Plaintiff in turn notes that he recalled working on Atwood valves because the brand name was stamped into the valve. Doc. 192-1 at 16. Additionally, he recalled working on several brands of valves "about equally," and performing gasket and packing changes on these valves. *Id.* Overall, Plaintiff testified that besides the valve brand name, all valves were the same and required the same kind of maintenance. *Id.*

At a minimum, Plaintiff is correct that his deposition testimony, the ship documents and blueprints, and the affidavit of expert witness Captain Bruce Woodruff meet his burden of showing a genuine issue of material fact as to whether Atwood valves were on the ship at all. But Plaintiff must also demonstrate a genuine issue as to whether these valves contained asbestos. *See Lindstrom*, 424 F.3d at 492.

He successfully does so by making a chain of inferences from his deposition testimony, Captain Woodruff's inventory of the relevant products used on the ship's steam rooms, and Captain Woodruff's opinions as to the applicable Navy regulations that would require asbestos to be used on certain valves.

First, Plaintiff cites Captain Woodruff's report, which lists Atwood main and auxiliary steam valves as being present in the Auxiliary Machinery Rooms where Plaintiff was assigned, as well as the Main Machinery Rooms where he worked occasionally. This inventory list, combined with the Navy regulations for steam valves, are likely Plaintiff's strongest pieces of evidence from which a jury could find that asbestos containing-Atwood products were on the ship. Doc. 211-3 at 12–13.

Plaintiff also testified that he knew the gaskets used aboard the ship contained asbestos because the word "asbestos" was written on the packaging, and that he recalled the steam valves (generally) using metal impregnated with asbestos.[7] Doc. 192-1 at 17. Further, Plaintiff explained at his deposition that every time he worked on the steam valves, he had to disturb asbestos-containing insulation. *Id.* at 19.

While Atwood is correct that Captain Woodruff did not definitively state that the Atwood valves in the engine rooms contained asbestos, he did opine that Atwood main and auxiliary steam valves were present where Plaintiff worked on the ship. Moreover, he explained that the U.S. Navy Bureau of Ships required asbestos-felt filled covers for use on main and auxiliary steam systems like those on the *Saratoga*. *See* Doc. 211-3 at 10, 12–13. Captain Woodruff stated that the steam used in the main and auxiliary steam system was between 850- and 950-degrees Fahrenheit (*id.* at 6), lending support to Plaintiff's argument that a jury could find that the valves would have more likely than not contained asbestos components based on the ship's schematics and the temperature in the steam system.[8] Considering all the evidence in the light most favorable to Plaintiff, a reasonable jury could make the same inferences and find that Plaintiff was exposed to an asbestos-

---

[7] Plaintiff highlights his deposition testimony recalling the use of John Crane asbestos-containing packing on the valves aboard the *Saratoga*, but does not explain why another company's products containing asbestos supports his arguments. Doc. 211 at 9.

[8] The Court denied Defendants' motions to exclude the opinions of Captain Woodruff and his expert, including the portions discussed in this order. They were thus found to be admissible under *Daubert*. *See* Doc. 359.

containing Atwood product while on the *Saratoga*. Therefore, Atwood's argument for
summary judgment based on the issue of product identification is unavailing.

*Substantial Factor Causation*

Atwood chose not to brief the issue of substantial factor causation in its
Motion, apart from a perfunctory citation to *Lindstrom*, accompanied by a
parenthetical noting a plaintiff's burden of proving substantial factor causation under
maritime law. Doc. 192 at 7. Therefore, having rejected Atwood's product
identification argument, the Court would typically stop there and deny Atwood's
motion.

Plaintiff, however, went on to argue in his response that not only has he
established his exposure to asbestos-containing products from Atwood, but that their
products substantially contributed to his lung cancer. *See* Doc. 211 at 5–16. He fully
presents his case for why the record contains enough evidence to submit the
substantial-factor causation issue to a jury and argues that there is "no question
[Plaintiff's] work on Atwood valves exposed him to asbestos fibers on a frequent,
regular, and proximate basis." Doc. 211 at 12–16. Plaintiff discusses his own
deposition testimony and expert reports in support of this argument. *Id.* Then, in
reply, Atwood discusses the same evidence to argue that Plaintiff has not established
a genuine issue as to substantial factor causation. Plaintiff did not file a motion for
sur-reply or otherwise indicate that he wished to be heard further on this issue.

After reviewing the briefing and applicable Eleventh Circuit law, the Court
concludes that it can consider the issue of substantial factor causation, raised in

Plaintiff's response, and addressed in Atwood's reply. As the Eleventh Circuit reiterated in *Breeding v. Integrated Behavioral Health Inc.,* No. 22-10374, 2023 WL 3735341, at *2 (11th Cir. May 31, 2023).

> A district court cannot grant summary judgment on "grounds not raised by a party" unless it first provided the parties with "notice and a reasonable time to respond[.]" Fed. R. Civ. P. 56(f)(2). Generally, the "onus" is not on the district court to "distill any possible argument which could be made based on the materials before the court" but were not raised by either party. *See Blue Cross and Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1549 (11th Cir. 1990).

In *Breeding*, an employment discrimination action, the defendant did not invoke or even reference the mixed-motive standard for discrimination claims in its motion for summary judgment. 2023 WL 3735341 at *2. However, the plaintiff thoroughly briefed it in her response and argued that her gender was a motivating factor in her termination. *Id.* On reply, Defendant acknowledged that Plaintiff used this theory and briefly argued that she had failed to prove gender discrimination under any theory or standard. The Eleventh Circuit found that under these circumstances, "the district court was permitted to consider the argument because it was raised by [Plaintiff] herself and addressed (albeit briefly) by [Defendant]."

Similarly, the issue of substantial factor causation was raised by Plaintiff (the non-movant) in his response and addressed—thoroughly—by Atwood in reply. Therefore, under *Breeding*, both parties had notice and a reasonable time to respond

on this issue, and the Court can both consider the substantial factor causation argument and grant summary judgment on that basis, if appropriate.[9]

In order to defeat summary judgment, Plaintiff must demonstrate that a genuine issue of fact exists as to substantial factor causation. The substantial factor causation test requires a plaintiff to show that a specific defendant's product was a substantial factor in causing his injury. *Lindstrom*, 424 F.3d at 492. This can be done by pointing to direct evidence of causation or circumstantial evidence. *McIndoe*, 817 F.3d at 1176. Minimal exposure, however, is insufficient. *Id.* (quoting *Lindstrom*, 424 F.3d at 492). Likewise, a mere showing that the defendant's product was present somewhere at the plaintiff's place of work is insufficient. *Id.* However, a plaintiff can meet his burden by providing evidence of substantial exposure for a substantial period of time to create the basis for a finding that a defendant's product was a substantial factor in causing his injury.[10] *Id.* Critically, a plaintiff must show "a high level of exposure [such] that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Cabasug*, 989 F. Supp. 2d at 1036 (citing *Lindstrom*, 424 F.3d at 492).

---

[9] Other trial courts in this Circuit have cited *Breeding* favorably for the proposition that arguments not made (or caselaw not raised) in an initial motion but brought up on response can be considered on summary judgment. *See Pope v. Dozier,* No. 2:20-CV-01399-RDP, 2023 WL 6131449, at *1 (N.D. Ala. Sept. 19, 2023).

[10] Plaintiff initially references the "frequency-regularity-proximity" test propounded in *Lohrman v. Pittsburgh Corning Corp.,* 782 F.2d 1156, 1160 (4th Cir. 1986). This case applied Maryland substantive law, not maritime law, which the Parties and the Court agree applies here. Even if *Lohrman* was the proper standard, Plaintiff's lack of defendant-specific evidence as to either defendant would result in summary judgment based on the Court's analysis, *see infra*.

Having established that the issue of causation can be considered and having set forth the applicable law, the Court turns to the Parties' arguments. Plaintiff asks the Court to apply a test similar to the "frequency-regularity-proximity" test propounded in *Lohrman v. Pittsburgh Corning Corp.,* 782 F.2d 1156, 1163 (4th Cir. 1986). Doc. 211 at 12. He argues that the record here shows that his work on Atwood valves "exposed him to asbestos fibers on a frequent, regular, and proximate basis." *Id.* Plaintiff first points to his testimony regarding changing out gaskets and replacing packing on valves. *Id.* at 12–13. He emphasizes that removing the old packing and cutting new packing took half an hour and caused visible dust to cloud which he inhaled. *Id.* at 13. Further, Plaintiff cites his testimony that, in removing the insulation covering the steam valves, asbestos dust again entered the air (and his lungs). *Id.* at 13–14.

Plaintiff turns next to the reports and affidavits of his experts for evidence of substantial factor causation. *Id.* at 14–15. He first notes that Dr. Zhang opined that his "primary lung cancer is related to asbestos exposure and the cumulative exposure of each asbestos-containing product significantly contributed to the development of [Plaintiff's] lung cancer." *Id.* at 14. Additionally, Plaintiff cites Dr. Zhang's opinion that "to a reasonable degree of medical certainty, all of [Plaintiff's] exposures that are found to be regular, frequent and proximate were substantial contributing factors to the development of his asbestos-related lung cancer, asbestosis and pleural plaque." *Id.* As noted in the background section of this order, Dr. Zhang's opinion that the cumulative exposure of *each* asbestos-containing product significantly contributed to

Plaintiff's illness was excluded under *Daubert*. *See* Doc. 361 at 19–22. The second

opinion, however, was not excluded. *Id.* at 22–23.

Plaintiff also points to Dr. Candace Tsai's expert report, which he argues

"attested to Mr. Edmonds [sic] exposure to asbestos from Atwood & Morrill valves."

Doc. 211 at 14–15. Dr. Tsai testified to the dangerously high quantities of asbestos

fibers Plaintiff's work exposed him to—and she concluded that his exposure to

asbestos was hundreds to millions of times above the ambient background level, and

that his service exposed him to concentrations of asbestos fibers in excess of even the

exposure limits of the 1960s and 1970s. *Id.* at 15. Thus, Plaintiff argues that the

expert testimony combined with his own testimony establishes substantial asbestos

exposure from Atwood valves. *Id.*

Atwood replies that Plaintiff fails to cite any record evidence in support of the

argument that "Atwood valves exposed him to asbestos fibers on a frequent, regular

and proximate basis." Doc. 213 at 6–10. First, it points out that no fact witnesses

spoke to the extent of Plaintiff's encounters with asbestos-containing Atwood valves

directly or as a bystander. *Id.* at 6. Moreover, Atwood argues that the testimony

Plaintiff relies on to argue causation detailed his general maintenance duties without

specifying the brand of gaskets or valves he worked on. *Id.* at 6–7. Atwood reiterates

that Plaintiff could not recall the specifics of his work with or exposure to its valves,

as he must to support a finding of substantial factor causation. *Id.* at 7.

Atwood also disagrees that the expert reports sufficiently fill in the gaps. *Id.* at

7–8. As to Captain Woodruff's report, Atwood argues that even if there were

21

asbestos-containing valves in the machinery rooms, he has no basis for opining as to the regularity of Plaintiff's exposure to these valves. *Id.* (citing *Hailey v. Air & Liquid Sys. Corp.,* Civil Action No. DKC 18-2590, 2020 WL 4732141, at *6). As to Dr. Zhang, Atwood argues that he did not opine that Plaintiff's alleged exposure to *Atwood* valves was itself a substantial factor in causing his lung cancer—and to the extent Dr. Zhang does state that each cumulative exposure substantially contributed to Plaintiff's illness, Atwood argues that such an opinion is improper and inadmissible.[11]

As to Plaintiff's third and final expert, Dr. Tsai, Atwood argues that she did not attest to, quantify, or even estimate the extent of his exposure to asbestos from Atwood valves. *Id.* at 9. Therefore, it argues that Dr. Tsai's generic opinion that Plaintiff was exposed to a high concentration of carcinogens while in the Navy does not create a genuine issue as to substantial factor causation. *Id.* In conclusion, Atwood argues that Plaintiff's vague testimony and inability to recall working on or interacting with Atwood valves, along with the absence of any probative expert testimony on the issue, can lead only to the conclusion that no reasonable jury could find for Plaintiff on causation. *Id.* at 9–10.

On this issue, the Court agrees with Atwood and finds that no reasonable jury could find from the evidence (without improper speculation) that Atwood products were a substantial contributing factor to Plaintiff's illness.

---

[11] The instant Motions were filed before the Defendants' various *Daubert* motions, including the motion to exclude the testimony of Dr. Zhang. As explained *supra*, the Court agreed with Defendants on this point and excluded Dr. Zhang's opinions in part.

This is so for several reasons. First, Plaintiff has not met his causation burden by way of citing *direct* evidence that an Atwood product was a substantial factor in causing his injury, such as through expert testimony or his own testimony. *See Pelton v. John Crane, Inc.,* No. 1:21-CV-4316, 2024 WL 361425, at *3 (N.D. Ill. Jan. 31, 2024) (citing *Lindstrom,* 424 F.3d at 498) (applying maritime law).[12]

Nor does he satisfy the substantial factor test with *circumstantial* evidence demonstrating "substantial exposure for a substantial period of time" to provide a basis for the inference that an Atwood product was a substantial factor in causing his injury. *Lindstrom,* 424 F.3d at 492. In other words, Plaintiff has not "show[n] a high enough level of exposure [such] that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Id.*

To meet this burden of specific causation, Plaintiff must present some evidence of either the amount of asbestos dust to which he was exposed, or the duration of the exposure. Plaintiff fails to provide any evidence related to these two

---

[12] The defendant's motion for summary judgment on causation was denied in *Pelton*. There, unlike in the instant case, plaintiff Pelton put forward several categories of defendant-specific evidence that the Court found was enough to survive summary judgment.

For example, Pelton testified that the large percentage of gaskets he removed and installed while in the Navy were manufactured by a particular company. *Pelton,* 2024 WL 361425 at *6. He stated that he had removed and installed gaskets on the specific defendant's valves hundreds of times, and that the Navy disproportionately used that company's (John Crane Co.) gaskets. *Id.* Furthermore, one of Pelton's experts opined regarding the duration of asbestos exposure over the course of Pelton's time serving on three ships. *Id.* Thus, the *Pelton* Court denied the defendant's motion, finding that the record contained "sufficient circumstantial evidence of the amount of asbestos to which Mr. Pelton was exposed, the duration for which he was exposed, and evidence that such exposure is attributable to Defendant's products." Here, the record lacks such evidence.

metrics, and "[w]ithout such facts, [Plaintiff (or a jury)] can only speculate as to the actual extent of his exposure to asbestos" from Atwood's materials. *McIndoe*, 817 F.3d at 1176-77. Speculation, however, is insufficient to create a genuine issue of fact. *See Cordoba v. Dillard's Inc.,* 419 F.3d 1169, 1181 (11th Cir. 2005).

In fact, as described above, Plaintiff just barely cleared the product identification hurdle, which required him to present enough evidence for a jury to find he was exposed to asbestos-containing Atwood products at all. This, as explained previously, he did via deposition testimony recalling the presence of Atwood valves and widespread asbestos usage, taken together with the expert testimony of Captain Bruce Woodruff, who opined that asbestos was likely used in Atwood products based on Navy specifications, ship diagrams, and the temperature at which steam was passed through in the rooms where Plaintiff worked.

However, as Atwood repeatedly argues, Plaintiff put forth no evidence of exposure to a specific Atwood product on a regular basis over some extended period of time in proximity to where he actually worked. *Sebright v. Gen. Elec. Co.,* 525 F. Supp. 3d 217, 245 (D. Mass. 2021). Because a mere "minimal exposure to a defendant's product is insufficient" to establish causation, *Lindstrom*, 424 F.3d at 492, and a jury here would be able to do no more than speculate as to the frequency, regularity, and proximity of Plaintiff's exposure to Atwood products, summary judgment must be granted in favor of Defendant Atwood.

24

### Warren Pumps, LLC's Motion (Doc. 225)[13]

Warren filed a separate motion for summary judgment (Doc. 225), to which
Plaintiff responded (Doc. 257) and Warren replied (Doc. 264). It first argued that
Plaintiff fails to establish that he ever worked with asbestos-containing Warren
products or around others who were exposed to asbestos from Warren products
(product identification). Additionally, Warren argues that Plaintiff fails to cite any
evidence showing that he was exposed with such frequency and regularity that
Warren could be considered a substantial contributing factor in causing Plaintiff's
injury. Doc. 225 at 2 (citing *Lindstrom,* 424 F.3d at 492).

After alluding to product identification, Warren focuses on substantial factor
causation in its discussion. Doc. 225 at 8–14. Because it is clear that Plaintiff has
failed to demonstrate a genuine issue on substantial factor causation, the Court will
begin and end there.

*Substantial Factor Causation*

Warren's arguments are in many ways similar to Atwood's. First, it
summarizes Plaintiff's deposition testimony and Navy service, noting that he did not
testify to encountering Warren Pumps during his post-Navy career or on any ship
besides the *Saratoga.* Doc. 225 at 10. It notes that although Plaintiff recalled Warren
as one of eight brands of pumps aboard the ship, he could not specifically recall
seeing a Warren pump in the Auxiliary Room where he was primarily assigned.

---

[13] In addition to briefing this second Motion, the Parties provided a joint stipulation of
material facts. Doc. 256.

Warren acknowledges that Captain Woodruff provided a list of equipment installed in the various engineering spaces on the ship, which referenced one Warren "main circulating pump" in each of the four Main Machinery Rooms. *Id.* However, Plaintiff did not testify to performing work on or being around others working on a Warren pump at any specific time or with any specific frequency. *Id.*

Thus, Warren contends that Plaintiff's testimony did not go beyond recalling the Warren brand name. Moreover, it notes that Plaintiff testified that he was not sure whether he recalled changing any packing or gaskets on a Warren pump. *Id.* Thus, taken in the light most favorable to Plaintiff, Warren argues that the deposition testimony and expert reports establish, at most, that Warren pumps were present in one of the spaces in which Plaintiff worked. *Id.* This, it argues, does not satisfy the requirement that Plaintiff provide evidence that his exposure was more than minimal and would not allow a jury to conclude that Warren was a substantial contributing factor to Plaintiff's lung cancer. *Id.* at 12–13.

Plaintiff responds that he has demonstrated a genuine issue of fact as to all three prongs of the causation standard. Doc. 257 at 4–12.[14] As to substantial factor causation, the primary area of contention between the Parties, Plaintiff asks the Court to employ a variation of the "frequency-regularity-proximity" test, as he did in response to Atwood's motion. *Id.* at 7–8. And again, Plaintiff discusses his general work with regard to pumps, recounting the visible dust flying into the air during the

---

[14] Warren's motion does not argue in detail that: (1) Warren pumps were not present on the *Saratoga;* or (2) that there is no genuine issue as to whether the pumps on board contained asbestos, Plaintiff's first two points. Thus, the Court focuses on substantial factor causation.

changing and packing process and the fact that he performed lengthy gasket changes on pumps approximately every four to six weeks. *Id.* at 8. Notably, neither this argument nor the underlying deposition testimony was specific to Warren pumps. Plaintiff again cites Dr. Zhang's expert report, including the opinion that the Court excluded pursuant to *Daubert. Id.* at 10. Specifically, the Court excluded Dr. Zhang's opinion that "the cumulative exposure of each asbestos-containing product significantly contributed to the development of his lung cancer." Plaintiff next states that Dr. Tsai attested to his exposure from Sarco products.[15] *Id.* at 10–11. In conclusion, Plaintiff argues that the combined expert opinions, deposition testimony, and Warren-specific evidence from outside the case raise a genuine issue of material fact as to whether Warren pumps were a substantial factor in causing his illness. *Id.* at 11.

Warren replies by arguing that Plaintiff miscites his own deposition testimony. Doc. 264 at 2. It notes that a review of the specific portions cited by Plaintiff show that he in fact did not testify to specific work or exposure to asbestos from Warren pumps, and that he stated "I'm not sure" when asked if he recalled changing any packing or gaskets on a Warren Pump. *Id.* Warren points out that Plaintiff's citations to the deposition testimony incorrectly attribute general testimony about pumps to Warren pumps specifically. *Id.* at 3–4. It reiterates that Plaintiff did not recall "any information at all about a Warren pump on board the *Saratoga*" and was not sure as to whether he recalled changing any packing or gaskets on a Warren pump. *Id.* at 4.

---

[15] As Warren points out, this presumably should have read "Warren products."

Thus, it argues that Plaintiff fails to meet his burden because he does not cite *any*
defendant-specific exposure evidence. *Id.* at 5 (citing *Lindstrom,* 424 F.3d at 493
(holding that the plaintiff must "make a showing with respect to each defendant that
the defendant's product was a substantial factor in plaintiff's injury.")). Finally,
Warren argues that Plaintiff's experts do not help him to meet his burden because
none offer a valid specific causation opinion or defendant-specific exposure analysis.
*Id.* at 6–7.

The principles of substantial factor causation from maritime law (epitomized
by *Lindstrom* and *McIndoe* and described *supra*), apply to this portion of the order as
well. Put simply, because Plaintiff relies on circumstantial evidence of substantial
factor causation, he must cite to evidence of substantial exposure for a substantial
period such that a reasonable jury could find that Warren was a substantial factor in
causing his injury. *Lindstrom*, 424 F.3d at 492. At this stage, he must demonstrate a
genuine issue of fact as to whether there was "a high level of exposure [such] that an
inference that the asbestos was a substantial factor in the injury is more than
conjectural." *Cabasug*, 989 F. Supp. 2d at 1036 (citing *Lindstrom*, 424 F.3d at 492).

However, Plaintiff fails to sufficiently support his claim that Warren products
were a substantial contributing factor to his illness. As the Court found in ruling on
Atwood's motion, nothing in the deposition testimony or expert reports would allow
a reasonable jury to conclude that substantial exposure to Warren products for a
substantial period of time caused Plaintiff's illness.

Instead, as discussed previously, Plaintiff's deposition testimony regarding exposure is general. Although he recounts in detail the types of tasks he performed, approximately how long they took, and the fact that he was exposed to asbestos, he is able to recall little when it comes to Warren's products.

The testimony of his experts does not provide much either. Again, Dr. Zhang's opinion that an exposure of any length or intensity is a substantial contributing factor has been excluded. And his second opinion, stating that causation is dose-dependent and depends on the frequency, regularity, and proximity of a plaintiff's exposure, does not help Plaintiff in terms of Warren's products. Finally, although Dr. Tsai prepared a thorough expert report on the background of industrial hygiene, the state of asbestos science, and the fact that Plaintiff's work likely exposed him to asbestos fibers at a dangerously high level, this testimony would not allow a reasonable jury to conclude that Warren's products in particular were a substantial contributing factor to his illness.

In conclusion, the applicable law requires that Plaintiff provide some evidence of "a high level of exposure [such] that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Cabasug*, 989 F. Supp. 2d at 1036 (citing *Lindstrom*, 424 F.3d at 492). As to the products of Atwood and Warren, Plaintiff fails to do so.

Accordingly, it is **ORDERED**:

1. The Motions for Summary Judgment of Defendant Valves and Controls US, Inc., f/k/a Valves and Controls USA, Inc., f/k/a Atwood & Morrill

Co., Inc. (Doc. 192), and Warren Pumps, LLC (Doc. 225) are
**GRANTED**. No genuine issue of material fact exists as to substantial
factor causation and Defendants are entitled to judgment in their favor as a
matter of law.

2. The Clerk is directed to enter judgment in favor of Defendants Valves and
Controls US, Inc., f/k/a Valves and Controls USA, Inc., f/k/a Atwood &
Morrill Co., Inc. and Warren Pumps, LLC and against Plaintiff, Arnold
Edmonds.

3. Although discussed at the status conference on March 5, 2024, it does not
appear that Plaintiff's claims against all remaining Defendants have been
dismissed or resolved by the Court. Plaintiff is, therefore, directed to advise
the Court on or before January 27, 2024 as to how he wishes to proceed
against the remaining Defendants or file stipulations of dismissal as to
those Defendants.

**DONE** and **ORDERED** in Tampa, Florida on January 13, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties